## FELIX A. SALTER

### vs.

## ORLANDO ALLEN.

1. On an appeal from a final decree of the Special Term, all inter-
locutory orders passed by the Court in the progress of the cause
are subject to review by the General Term, except where such
orders rest in the discretion of the presiding justice and do not af-
fect the merits of the case.
2. Where complainant is compelled to resort to a court of equity to
obtain his rights in respect of a fund in controversy or relinquish
them, and it appears on an account being taken that the defendants
have not acted honestly, nor in obedience to the order of the Court,
the costs will be charged against their share of the fund.

In Equity, No. 752.   Decided April 6, 1867.

ON APPEAL from a final decree.   Bill in equity for an
account.

THE FACTS are stated in the opinion.

MR. ENOCH TOTTEN, for plaintiff.

MR. JOHN E. NORRIS, for defendant.

MR. JUSTICE OLIN delivered the opinion of the Court:

The bill in this case avers that it was agreed between the
complainant and the defendant, Allen, and for their joint
benefit, to submit a proposition to the General Government
to raise certain property, sunk in the Potomac, upon being
paid 45 per cent. of the proceeds of the sale of such prop-
erty when raised; that this proposition for some reason
unknown to the complainant was submitted in the name of
Allen, and accepted by the Government on or about the
17th May, 1866.

The bill further alleges that it was agreed between com-
plainant and Allen that the former was to advance the
funds necessary for the prosecution of the enterprise and

that the moneys arising therefrom belonging to complainant and defendant, Allen, should be drawn from the General Government by and exclusively controlled by the complainant.

That on the 19th May, 1866, the defendant, Allen, for the purpose of carrying out the original agreement, between the parties executed and delivered to the complainant and assignment of one-half of his interest in the contract with the General Government; that assignment is made an exhibit in the case.

The only material provision contained in this assignment is the following: "All money that the said Felix A. Salter advances in the undertaking is to be reimbursed to him out of the first returns from the sale of the United States property so recovered, the balance to be equally divided between the parties."

The complainant further alleges that he and the defendant, Allen, entered upon the performance of their contract with the Government and that he advanced the sum of $291.88 and loaned his credit to the amount of $65.27 in furtherance of the work.

That a large amount of property was raised out of the river and delivered to an officer of the Federal Government at Alexandria, Va., and by him sold on the 23d of August, 1866, for about the sum of $6,000.

That in July, 1866, the defendant, Allen, assigned or claimed to have done so, one-half of his interest in the contract with the Government to the defendant, Martin, without the knowledge or consent of the complainant, and that he, Allen, executed a power of attorney authorizing the defendant, Martin, to apply for and receive the amount due from the Federal Government to complainant and Allen, and charges that this was done with the intent on the part of Allen and Martin to defraud the complainant.

The bill also states that there is a large stock of tools, machinery, &c., purchased to carry out the agreement with

the Government, one-half of which belongs to the complainant and from the use of which the complainant has been excluded by the defendants.

It is further stated that the defendants are transient residents of this District and irresponsible, and that if they are permitted to receive the moneys due from the General Government the complainant would sustain irreparable injury.

The bill concludes with a prayer for the appointment of a receiver and for a writ of injunction to be issued against the defendant's restraining them from applying for or receiving the said moneys in the hands of the officer (Cailly) of the General Government or from interfering therewith in any manner whatever.

The answer of Allen denies that the application to the Government was made on the joint account of himself and the complainant, or that the agreement of the 19th of May, 1866, was executed for the purpose of carrying out any original understanding or agreement between the said complainant and the defendant, Allen. These averments are of little or no importance, inasmuch as the answer admits the execution of the agreement of the 19th of May aforesaid. If it were otherwise the agreement in its recital seems to confirm most strongly to the averments of the bill. It begins by saying that Felix A. Salter, the complainant, and Captain Orlando Allen having received permission from the Government to recover the United States property sunk in the Potomac River, &c., agree as follows, &c.

The answer denies that there was any agreement or understanding that he, Allen, was not to have any moneys from the hands of the Government officers, or that such moneys were to be exclusively controlled by the complainant.

That the complainant has not made the advances claimed in his bill, viz., $921.88, but only the sum of $881.38.

The answer further proceeds to state that the complain-

ant did not furnish all the money necessary to carry out the enterprise with the Government, an averment quite unnecessary, inasmuch as there was no agreement in writing to that effect between the parties, but simply that complainant should be first paid out of the proceeds of the sale of recovered property the amount of whatever advances he might make; and the answer further states that the complainant did not keep the schooner Susan Ann Harwood in readiness to assist in said work and transport said property as fast as raised. The same observation may be made as to the averment in the answer, to wit, that there is no agreement that the schooner should be so kept, but simply that when so employed no charge should be made for the use of it.

The answer further avers that on the 13th of July, 1866, the complainant took away the schooner Susan and removed it to Georgetown, and thereby deprived him, Allen, of the power to complete the contract with the Government, and compelled him to look for assistance elsewhere. That he thereupon applied to the defendant, Martin, who advanced him the sum of about $800 to enable him to complete his contract, and assigned to him one half his, defendant Allen's, interest in the contract, the complainant having abandoned the contract, as he, Allen, charges and believes.

Allen admits that some $6,000 were realized from the sale of the property recovered, and that of this sum the plaintiff and defendant, Allen, were entitled to $2,700, one half of which last named sum the defendant, Allen, claims to be entitled to, subject to the advances made by the defendant, Martin, and subject, also, to the advances of the complainant; that of the property raised after the 13th of July last (the date when it is charged in the answer the complainant abandoned the contract), the defendant, Allen, claims that he is entitled to three fourths of the amount coming from the Government, and Martin one-fourth.

This is, perhaps, the substance of all the answer of the

24

defendant, Allen. The answer of the defendant, Martin, so far as he appears to know any thing of the facts of the case, is corroborative of the answer of Allen.

An injunction was granted, as prayed for in the bill, and served upon the defendant. The cause, after being at issue, was referred to the Auditor of this Court, who, having taken the proofs of the parties, made his report to the Court, September 28th, 1866.

No exception was taken to this report. The Auditor finds in his report that nearly, if not quite all, the assets of the enterprise, amounting to $2,700, were in the hands of one Cailly, a 'Quartermaster of the Army, and of that sum the complainant was entitled to $1,500.20, the defendant, Martin, to $884.05, and the defendant, Allen, $315.75.

The defendants of course learning the terms and conditions of this report conceived the brilliant if not honest purpose of possessing themselves of the whole fund in the hands of the quartermaster, and to that enterprise it is quite apparent from the facts in the case this quartermaster lent his aid. Allen obtained from that quartermaster $1,500 and with considerable haste left this District and the jurisdiction of this Court, having however first left an order on the quartermaster to pay to the defendant Martin the sum of $1,000 and instruction to retain in the quartermaster's hands the sum of $200, to be paid to some claim agent for his service in the matter whose name is not mentioned. That service could only consist in urging the quartermaster to pay over the fund in his hands to the defendant Allen, or in advising Allen and Martin to violate the order of this Court and devising the means by which he thought it could be done with impunity. As an ominous silence in all the papers in this case is observed as to the name, residence, or services of this claim agent, and as it further appears that the quartermaster was by the arrangement between himself and Allen allowed to retain in his hands $200, and as this quartermaster had himself taken the pains

to obtain from the second comptroller a certificate that courts of law could not restrain by writs of injunction the various bureaus of the Federal Government, I am constrained to believe that this quartermaster is virtually and truly none other than the claim agent who reserved this sum of $200 for his complicity with the defendants in violating the injunction of this Court. I come to this conclusion reluctantly, but the force of facts proven in the case, and the absence of explanation where explanation could be easily made if there were any, compels the belief that the quartermaster entered into this conspiracy with the defendants to violate the order of this Court and for a consideration in money.

I will here remark that while I fully concur in the rule which exempts the heads of the various bureaus of the executive departments of the government from interference or supervision by courts of law in respect to all matters which the Constitution or laws have committed to their discretion or judgment, I still think there is no rule of law or public policy which would exempt a corporal or quartermaster of the army from the service of a writ of injunction and from punishment for its violation unless he can show by way of excuse that the act done in violation of the order of the Court was done in obedience to the express directions of the executive department of the government.

The complainant thus finding that the whole fund in the quartermaster's hands had been disposed of, not in pursuance of the order of this Court, made application for writs of attachment against the defendants for a violation of the writ of injunction. Allen, having fled the District, Martin was served with process and appeared and answered as well as he might the alleged contempt. His answer is amusing for its simplicity and rediculous by way of defense.

It is in substance that in drawing the $1,000 from this quartermaster he did not intend to violate the order of this Court, but as he got an order from Allen on the quarter-

master for the money and the quartermaster paid him the money on that order, he supposed he was receiving the money from Allen and not from the quartermaster, and therefore was not violating the writ of injunction issued in the case.

It will be perceived that of the $2,700 in the hands of the quartermaster, Slater was by the auditor's report, entitled to $1,500.20, Martin to $884.05, Allen to $315.75. It is perfectly apparent that both Allen and Martin knew all about the character and terms of the auditor's report and the share of this fund to which each was entitled. They did not like that distribution and thereupon Allen takes $1,500, Martin $1,000, and $200 is left for this mythical claim agent which uses up the entire fund.

Upon the hearing of the attachment Martin is very properly convicted of a contempt of Court for a violation of the injunction, and was ordered to pay into Court the $1,000 he had received from the quartermaster and in default thereof be committed to the Jail of this District.

The money being paid into Court the cause came on for hearing and final decree upon the pleadings and auditor's report, and it was decreed as follows: "That the complainant Salter receive out of the sum of $1,000, the sum of $629.21 and pay two-thirds of the costs of the suit and that the said Martin received the sum of $370.79, and pay one-third of the costs of this suit, and that Salter have execution against Allen for the balance reported due him."

From this decree an appeal is brought to this Court, and the sole question in the case and one, too, of much practical importance is, whether on appeal to this Court from a final decree of a justice sitting in equity every interlocutory order made by such justice in the progress of the cause may be examined into, revoked or altered in such way as in the judgment of this Court is proper and just; or whether this Court on appeal can make any and every modification of any interlocutory order which may have been made in the

progress of the cause as to this Court seems proper and meet to have been made.

We think the true rule to be this, that all interlocutory orders are open to review on appeal, except where such orders rest in the discretion of the presiding justice and do not affect the merits or justice of the case.

Tested by this rule we think the order passed on the attachment to show cause for contempt as well as the final decree are both open to examination, especially as the final decree seems to have been but a corrollary from the order made on the attachment.

This, then, is the case, after the report of the auditor is made, and with full knowledge of its contents by the defendants Allen and Martin, they conspire together to overreach the injunction order of this Court, and to possess themselves of the whole fund in litigation. They execute that purpose, Allen escapes the jurisdiction of this Court, Martin is caught with $1,000 in his pocket. He is arraigned before this Court for a contempt of its process, is convicted, and on the final decree is allowed to take the same share of this $1,000 that he would have been entitled to recover had he acted honestly and obediently to the process of the Court. The papers in the case show, and the statement of Martin clearly prove his complicity with Allen in the attempt to violate the order of the Court and possess themselves of the fund in dispute. It will be seen by the agreement of the parties between Salter and Allen, that all advances made by Salter in the prosecution of their contract with the Government, were to be first paid out of any fund realized. The auditor finds that Salter had advanced $841.87 in aid of the enterprise. This amount Salter was entitled to receive before the division of profits commenced. Giving Salter that sum there would be left from the fund paid into Court the sum of $158.13, perhaps enough to pay the costs of this litigation. That sum of $158.13 was profits, and Salter was entitled by the terms of the contract and

the decision of the auditor to one half, $98.06. There remained the same amount to be distributed between Allen and Martin, supposing the whole fund for distribution had only amounted to $1,000, but as Allen had got into his possession $1,500 of the fund with the complicity of Martin, when there was due to him but $315.75, he would seem to have no very strong equity for sharing one-quarter of the balance of the $158.13 to be distributed on the final decree. We are at a loss to discover upon what principle it is decreed that complainant Salter is made to pay two-thirds of the costs of the suit.

He was compelled to resort to a court of equity to obtain his rights or relinquish them. He had but one-half interest in the controversy, and had Martin and Allen acted honestly and obediently to the order of this Court, the costs of the litigation might properly be charged upon the fund. But there seems abundant reason in this case for the application of a different rule.

We think the decree below should be so modified as to pay to complainant Salter out of the fund in Court the sum of $841.89, with interest thereon from the 28th of September, 1866, and that out of the balance remaining the complainant be paid the costs of this suit if sufficient for that purpose. If any sum remain after the payment of such cost the complainant to receive one-half thereof and the defendant Martin the other half, and that the complainant and defendant Martin have execution against the defendant Allen for such sums respectively as by the auditor's report may be due them, deducting the amount recovered from the fund in Court.